IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LILIA MARTINEZ RODRIGUEZ, BOP ID 72638-019,<br>  Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>  Respondent. | CIVIL ACTION NO.<br>1:21-CV-5148-LMM-CCB<br><br>CRIMINAL ACTION NO.<br>1:19-CR-76-LMM-CCB-24 |

**ORDER AND FINAL REPORT AND RECOMMENDATION**

This case is before the Court on Lilia Martinez Rodriguez's pro se amended motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody [Doc. 1081], the government's response [Doc. 1089], Rodriguez's reply [Doc. 1229 (unsigned); Doc. 1231 (signed)], and Rodriguez's motion to expand the record [Doc. 1232]. For the reasons stated below, I will grant the motion to expand the record and recommend that the § 2255 motion be denied.

In August 2019, Rodriguez and 19 co-defendants were charged in a 35-count second superseding indictment with crimes related to a large-scale drug trafficking and money laundering operation. *See* [Doc. 393]. Rodriguez retained counsel, paying a self-reported retainer of $27,000. *See* [Doc. 1081-1 at 3]. After a falling out with her first attorney, Rodriguez retained new counsel, paying a second self-reported retainer of "over $30,000." [*Id.* at 5].

Rodriguez met with prosecutors numerous times, *see* [Doc. 1081-1 at passim], and, in September 2020, Rodriguez entered into a negotiated plea to one count charging her with money laundering conspiracy in violation of 18 U.S.C. § 1956(h), pursuant to which the government would drop the seven other counts against her. *See* [857-1 (plea agreement)]. As relevant here, Rodriguez acknowledged the following factual basis for her guilty plea to money laundering conspiracy.

> 12. The parties agree that if this case went to trial, the Government would pro[ve] by admissible evidence and beyond a reasonable doubt the following fact[s]:
>
> a. This case resulted from a multi-month Drug Enforcement Administration ("DEA") investigation involving federal court-authorized wiretaps and seizures of more than 100 kilograms of methamphetamine, as well as kilogram-quantities of heroin and fentanyl.
>
> b. During at least November 2018 through February 2019, the Defendant participated in a money laundering conspiracy by knowingly transmitting drug proceeds from the Northern District of Georgia to Mexico and elsewhere.
>
> c. Co-defendant Juan Torres Chavez ("Torres Chavez"), who was incarcerated at the time, communicated with the Defendant from prison using a contraband cell phone. Torres Chavez regularly directed the Defendant to wire drug proceeds to specified recipients in Mexico.
>
> d. To conceal and disguise the nature, location, source, ownership, and control of the drug proceeds, the Defendant sent dozens of wires just under $1,000. Small wire amounts were sent to many different recipients and were sometimes sent using fake sender names. Multiple different money

      remitters were used. At one point, the Defendant told Torres Chavez that sending money through MoneyGram had become difficult, but suggested other money remitters that could be used.

  e. The defendant transmitted more than $56,000 in this manner.

  f. The Defendant understood that the money she was wiring at the direction of Torres Chavez and others was the proceeds of drug trafficking. Torres Chavez, a prison inmate, had no legitimate source of income. Moreover, the Defendant regularly discussed the organization's drug trafficking activities with Torres Chavez and with her significant other, co-defendant Benjamin Villareal Perez ("Villareal").

  g. The Defendant also regularly transported Villareal to and from drug stash houses, including the house located at 6585 Old White Mill Road, to assist in his drug trafficking activities.

  h. During at least November 2018 through February 2019, the Defendant knowing participated with others in a conspiracy to commit money laundering, during which she transmitted and/or assisted in the transmission of at least $56,000 in drug proceeds, which is equivalent to approximately 8.6 kilograms of methamphetamine.

[Doc. 857-1 at 5–6]. The parties further agreed on the sentencing guidelines calculation for the offense (more on this below), and the government agreed that it would not seek a sentence of more than 120 months imprisonment, while Rodriguez agreed that she would not seek a sentence of less than 60 months imprisonment. [*Id.* at 9]. The plea agreement included in the Acknowledgement of Penalties section a sentence stating, "Defendant further understands . . . that no one can predict her exact

3

sentence at this time." [Doc. 857-1 at 3]. And, among other things, Rodriguez explicitly acknowledged that she had carefully reviewed and understood the plea agreement, that she voluntarily agreed to it, that no one had threatened or forced her to plead guilty, that "no promises or inducements have been made . . . other than those discussed" in the plea agreement, and that she was "fully satisfied with the representation provided to [her] by [her] attorney." [*Id.* at 17].

On September 21, 2020, the Honorable Leigh Martin May held a Rule 11 hearing and accepted Rodriguez's guilty plea. *See* [Doc. 857 (minute entry)]; *see also* [Doc. 1087 (transcript)]. During the Rule 11 hearing, the government read paragraph 12 of the plea agreement–reproduced above and setting forth the factual basis for Rodriguez's plea–into the record. *See* [Doc. 1087 at 17–19]. Rodriguez stated that she had no disagreement with the government's summary of the evidence. [*Id.* at 19].[1] Rodriguez affirmed that she understood her sentence could not be

---

[1] Judge May had previously advised Rodriguez that: "[T]his is something that you need to listen to very carefully because what this is, is what the government says that you've done to violate the law. And if there's anything she says that you did that you don't agree with, even if you think it may be a minor point, it's going to be important for you to let me know what that is after she finishes." [Doc. 1087 at 16–17].

Judge May also advised Rodriguez that she had "been placed under oath . . . and that means that you have to answer all the questions asked of you completely and truthfully" and that she might be subject to prosecution for perjury if she "were

4

determined until after a presentence report was completed, that the determination of her sentence would then be solely up to the judge, and that even if she were to receive a sentence that was harsher than she expected she would not be allowed to withdraw her guilty plea. [*Id.* at 20–22]. Rodriguez agreed that she had not been threatened, pressured, forced, or intimidated into pleading guilty and that no promises or representations not included in the plea agreement had been made to induce her guilty plea, including that no promise had been made to her "as to what [her] actual sentence will be". [*Id.* at 29]. Rodriguez then affirmed that she was "satisfied with the services [of her] lawyer," had "had enough time to talk with [her] lawyer and discuss the case and the decision to plead guilty," and was in fact voluntarily pleading guilty "because [she was] guilty." [*Id.* at 29–30].

When Rodriguez was sentenced in December 2020, Judge May determined that the applicable custody guideline range was 168-210 months. *See* [Doc. 1088 at 6]. The government requested a below-guidelines sentence, stating that it "believe[d] that a sentence of between five years and ten years is warranted under

---

knowingly to make any false statement under oath." Rodriguez stated under oath that she understood this. [Doc. 1087 at 8].

And Judge May advised Rodriguez that if she "had some falling out or disagreement with [her lawyer, she] could hire a different lawyer [or have] a different lawyer [appointed] at no cost." [Doc. 1087 at 14].

5

[18 U.S.C. §] 3553(a), [and it was] seeking a sentence at the higher end of that range to avoid unwarranted sentencing disparities with respect to other defendants in this case and in consideration of all of the factors under 3553(a)."  [*Id.* at 17]. Rodriguez's attorney requested a below-guidelines sentence of 60 months.  [*Id.* at 48].

Judge May imposed a below-guidelines term of imprisonment of 96 months. [Doc. 1088 at 48].  In explaining how she arrived at this sentence–which was "many years less than what the suggested sentence would be, but at the same time . . . greater than what [Rodriguez] had asked for," [Doc. 1088 at 52]–Judge May made the following observations about Rodriguez's criminal conduct.

> [O]ne of those factors I look at is what was involved in the crime, what it is that you did . . . .  And that's something that's very important for me to look at.  And here we have a lot of activity.  There are dozens of these wire transfers.  You're heard on the wires making suggestions about how they go better.  You're not just blindly following orders. You're very involved in making these wire transfers happen.  You allow your home to be used as a stash house where the drug operations are occurring.  Even after there's a search warrant executed at your house, it's still being used for that purpose.  You're a driver.  You're involved in that level.  One of the wires has you keeping an eye on the runners.  Certainly I also find that a leadership role wasn't necessarily appropriate, but you certainly showed some level of managerial control here with this organization and you're interacting with the leaders directly who were impressed with your work in behalf of the drug trafficking organization.  And the wires also show to me a degree of comfort as to everything that's going on.  You're having very comfortable conversations dealing with the day-to-day activities with the drug trafficking organization, so you're not just someone that's

> taking orders and executing them and keeping your head down. You're much more involved in this organization than many of the other people that have already been sentenced here. So certainly from just the standpoint of what you did, it's very serious and warrants a serious sentence.

[Doc. 1088 at 52–53].

After sentencing, Rodriguez changed lawyers a second time and filed a notice of appeal. *See* [Docs. 921 & 924]. Soon thereafter, Rodriguez's appeal was dismissed for want of prosecution. *See* [Doc. 965].

Proceeding pro se, Rodriguez filed the amended § 2255 motion now pending before the Court. *See* [Doc. 1081]. In her amended motion, Rodriguez seeks unspecified relief on the grounds that she was allegedly advised to lie to the government to *overstate* her involvement, which resulted in "fraud on the court" (ground one) and reflected "ineffective assistance of counsel" (ground two). *See* [*id.* at 3, 4]; *see also* [Doc. 1081-1 at passim].

After the government responded to these two grounds, Rodriguez filed a reply and a motion to expand record. *See* [Docs. 1229, 1231, 1232]. I **GRANT** that motion, and I will liberally construe Rodriguez's filings to further amend her § 2255 motion to add additional claims of ineffective assistance of counsel, premised on new contentions that she was promised a sentence of less than 96 months and did not voluntarily plead guilty. *See* [*id.* at passim].

7

Now seeking to minimize her involvement in the drug trafficking and money laundering organization, Rodriguez states that she felt "intimidated" and "pressured" by her first attorney, whom she states, "was upset after the first interview with the government" and "said, 'Why didn't you do as I said and tell the truth!'" [Doc. 1081-1 at 4]. Notably, Rodriguez responded by firing that attorney, who was not involved her later plea. [*Id.* at 4–5]. Rodriguez further states that the second law firm also "advised that I tell the truth," asserting that a paralegal at that firm who served as her principal point of contact told her it would not be "believable" if she denied that a recorded conversation about "wood" and a recorded conversation about "tacos" were actually about wood and tacos and so she ought to tell the government those were code words for money and drugs. [*Id.* at 6]. Rodriguez also alleges that the paralegal advised her to admit that "I knew certain people I did not know." [*Id.*]. Rodriguez states that "I trusted my attorneys so I followed their instructions." [*Id.*]. Rodriguez asserts that when she "tried to tell the truth," the paralegal "continued to proceed to fabricate a story that the government would find to be more credible." [*Id.*].

Rodriguez now contends that "[t]he evidence the government had against me was two recordings of me discussing a property and the other was of a money transfer of $200–not exceeding $900." [*Id.*]. However, Rodriguez never seriously

8

disputes the factual basis for her plea that she acknowledged in writing in her plea agreement and then affirmed in its entirety while under oath during the Rule 11 hearing. Nor does Rodriguez seriously address the comments Judge May offered about her conduct during the sentencing hearing, including dozens of wire transfers and many more than two recorded conversations on which she was heard speaking with her co-conspirators about the day-to-day activities of the criminal enterprise.

As the Eleventh Circuit has stated:

> To prevail on an ineffective assistance of counsel claim, a petitioner must show (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). For deficient performance, a petitioner must demonstrate that his counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. And for prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quoting *Strickland*, 466 U.S. at 694). In the context of a guilty plea, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "Surmounting *Strickland*'s high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (citations and quotation marks omitted).

*Martin v. United States*, 949 F.3d 662, 667 (11th Cir. 2020).[2]

---

[2] Notably, Rodriguez quotes this passage in her brief, albeit without citation to *Martin*. *See* [Doc. 1081-1 at 9–10].

Furthermore, "[t]here is a strong presumption that the statements made during the [plea] colloquy are true. *Riolo v. United States*, 38 F.4th 956, 968 (11th Cir. 2022) (quoting *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Consequently, the "defendant bears a heavy burden to show" that the statements that she made under oath at her plea hearing were false. *United States v. Davila*, 749 F.3d 982, 996 (11th Cir. 2014) (internal quotation marks omitted).

Here, Rodriguez has not alleged facts that carry her heavy burden to show that the statements she made at her Rule 11 hearing were false. Not only does Rodriguez state that both her lawyers advised her to tell the truth (not to lie), but her subsequent contention that a paralegal encouraged her to tell the government that "wood" and "tacos" meant money and drugs and to admit that she "knew certain people that [she] did not know," [Doc. 1081-1 at 6], is trivial in light of the overwhelming factual basis for her plea that she affirmed under oath. Even if this Court credits as true those limited and specific claims (and assumes "deficient performance"), there would still be no basis for finding that Rodriguez would not have pleaded guilty and would have insisted on going to trial. *First*, Rodriguez herself has not alleged that she wanted to go to trial. And, *second*, even if she had, it is not reasonably probable that a rational defendant facing the overwhelming evidence against her that Rodriguez faced, would have elected to go to trial. Consequently, Rodriguez did not

10

suffer prejudice such that her Sixth Amendment rights were violated, and relief under § 2255 is not warranted. *See Hill*, 474 U.S. at 59; *see also Padilla*, 559 U.S. at 372.

Furthermore, Rodriguez's additional claims that she received ineffective assistance of counsel and/or that her guilty plea was not voluntary because she was promised and relied upon her attorneys' assurances that she would receive a shorter term of imprisonment than 96 months are affirmatively contradicted by the record, including the questions she was asked by Judge May and the responses she gave during the Rule 11 hearing. Even assuming that Rodriguez's lawyers promised her a sentence shorter than 96 months and that she "relied" on that promise (which Rodriguez stated under oath had not happened), Judge May was very clear during the Rule 11 hearing that no such promises could be made or relied upon. *See* [Doc. 1087 at 20–21, 28–29]. Rodriguez was fully apprised that her sentence could not be determined until after she had pled guilty and that even if the sentence imposed was harsher than she expected she could not withdraw (or appeal) her guilty plea for that reason. [*Id.* at 20, 28]. Again, no relief under § 2255 is warranted.

To the extent that Rodriguez seeks discovery, *see, e.g.*, [Doc. 1231 at 2–3], none is appropriate here. "A habeas petitioner is not entitled to discovery as a matter of course." *Prada v. United States*, 692 F. App'x 572, 574 (11th Cir. 2017) (citing

*Bracy v. Gramley*, 520 U.S. 899, 904 (1997). "Good cause" is required, and "good cause" exists only where "specific allegations . . . show a reason to believe that the petitioner could, with fully developed facts, demonstrate [she] is entitled to relief." *Id.* Even if all of Rodriguez's specific factual allegations are credited, she is not entitled to relief and so she has not shown "good cause" for discovery.

Furthermore, Rodriguez is not entitled to an evidentiary hearing because, even if true, the specific and limited instances in which she alleges one lawyer's paralegal advised her to bend the truth and the allegations that her lawyers promised her a shorter sentence would not entitle her to relief under § 2255. *See, e.g., Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (the Court "need not hold a hearing if the allegations are patently frivolous, based on unsupported generalizations, or affirmatively contradicted by the record") (internal quotation marks omitted).

Finally, Rodriguez is not entitled to a certificate of appealability because she has not made a substantial showing of the denial of a constitutional right, a demonstration that requires showing that reasonable jurists could debate whether (or agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); 28 U.S.C. § 2253(c)(2).

For the foregoing reasons, (A) I **GRANT** Rodriguez's motion to expand the record [Doc. 1232] and liberally construe her filings [Docs. 1229, 1231, 1232] to add additional claims to her § 2255 motion, and (B) I **RECOMMEND** that (1) Rodriguez's § 2255 motion, as so "expanded" and amended, be **DENIED**, (2) her request for discovery be **DENIED**, (3) an evidentiary hearing be **DENIED**, and (4) a certificate of appealability be **DENIED**.

I **DIRECT** the Clerk to terminate the referral of the civil case (No. 1:21-CV-5148-LMM) to me.

**SO ORDERED, REPORTED, AND RECOMMENDED**, this 14th day of December, 2023.

_____
CHRISTOPHER C. BLY
UNITED STATES MAGISTRATE JUDGE